# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

VINCENT W. AMBROSE,

        Plaintiff,

vs.                      Case No. 3:16-cv-1256-J-JRK

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.
_____/

## OPINION AND ORDER[1]

### I. Status

Vincent W. Ambrose ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claims for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of a "lumbar back injury," "S/P[2] lumbar laminectomy," "S/P stent placement," coronary artery disease, high blood pressure, high cholesterol, and sleep apnea. Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed December 27, 2016, at 62-63, 72, 169 (emphasis and capitalization omitted). On February 25, 2014, Plaintiff filed an application for DIB, alleging an onset disability date of June 2, 2013. Tr. at 144.[3] Plaintiff's application was denied initially,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed December 27, 2016; Reference Order (Doc. No. 15), entered December 29, 2016.

[2] "S/P" likely means "status post."

[3] Although actually completed on February 25, 2014, see Tr. at 144, the protective filing date of the DIB application is listed elsewhere in the administrative transcript as February 24, 2014, see Tr. at 62.

see Tr. at 62-70, 71, 88, 89-90, and was denied upon reconsideration, see Tr. at 72-85, 86, 93, 94-95.

On September 10, 2015, an Administrative Law Judge ("ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 37-61. At the time of the hearing, Plaintiff was fifty-three years old. Tr. at 39-40. The ALJ issued a Decision on October 5, 2015, finding Plaintiff not disabled through the date of the Decision. Tr. at 14-31.

The Appeals Council then received additional evidence consisting of medical records from treating physician Dr. Arkam Rehman dated November 4, 2014 to September 30, 2015. Tr. at 5; see Tr. at 534-74 (medical records). On August 5, 2016, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On October 3, 2016, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes two arguments. First, Plaintiff contends that the ALJ improperly relied on Dr. Ashutosh Pradhan's opinion in rejecting the opinion of Dr. Rehman "that [Plaintiff] could not work due to failed back surgery and [Plaintiff's] pain and other symptoms" and in making the credibility finding. Plaintiff's Brief (Doc. No. 19; "Pl.'s Br."), filed March 27, 2017, at 1, 13; see Pl.'s Br. at 9-12. In making this argument, Plaintiff also asserts that "[t]he ALJ's analysis of [Plaintiff's] pain and other symptoms was tainted by the ALJ's reliance on Dr. Pradhan's opinion . . . ." Id. at 13. Second, Plaintiff asserts that "[t]he Commissioner's finding that [Plaintiff] retains the residual functional capacity [("RFC")] to

perform jobs available in significant numbers in the national economy is not supported by the [VE] testimony." Id. at 1; see id. at 13-15. On May 26, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 20; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II. The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 16-31. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since June 2, 2013, the alleged onset date." Tr. at 16 (emphasis and citation omitted). At step two, the

---

[4] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease of the lumbar spine with sciatica; cervical radiculitis; coronary artery disease (CAD), status post stent placement; hypertension; and obesity." Tr. at 16 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) except he needs a sit/stand option (needs to be able to sit or stand at his option, but can maintain [thirty]-minute increments/cycles to perform the tasks assigned); needs to avoid ladders or unprotected heights; needs to avoid the operation of heavy moving machinery; needs to avoid concentrated dust, fumes, or gases; occasionally bend, crouch, kneel, or stoop; needs to avoid squatting or crawling; needs to avoid the operation of foot controls; needs a monocane for ambulation; and has a [ten]-pound frequent and occasional weight limit.

Tr. at 18 (emphasis omitted). At step four, the ALJ relied on the VE testimony and found that Plaintiff "is unable to perform any past relevant work." Tr. at 29 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("[fifty-one] years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ again relied on the testimony of the VE and found that Plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." Tr. at 30 (emphasis and citation omitted); see Tr. at 30-31. Specifically, the ALJ found that Plaintiff can perform the job of a cardiac monitor technician. Tr. at 31. The ALJ concluded that Plaintiff "has not been under a disability . . . from June 2, 2013, through the date of th[e D]ecision." Tr. at 31 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

As noted, Plaintiff takes issue with the ALJ's reliance on Dr. Pradhan's opinion to reject Dr. Rehman's opinion, the effect this reliance had on the ALJ's credibility issue, and the ALJ's five-step finding. See Pl.'s Br. at 9-15. These arguments, and the law applicable to each, are addressed in turn.

### A. Medical Opinions and Credibility Finding

#### 1. Parties' Arguments

Plaintiff argues that "[t]he ALJ erred in accepting Dr. Pradhan's interpretation of the severity of [Plaintiff's] lumbar spine condition over the opinion of Dr. Rehman." Pl.'s Br. at 10. According to Plaintiff, the ALJ's reliance on Dr. Pradhan's opinion was improper because Dr. Pradhan's opinion "does not appear to have been based on a complete set of objective testing." Id. at 10. Specifically, Plaintiff asserts that "Dr. Pradhan never mentioned the 2013 EMG[ ] findings that corroborated [Plaintiff's] lower extremity pain and symptoms," while Dr. Rehman indicated that the "2013 EMG[ ] showed right L4 and L5 radiculopathy and predominantly motor polyneuropathy." Id. Further, according to Plaintiff, Dr. Pradhan treated Plaintiff "a handful of times whereas Dr. Rehman continued to treat [Plaintiff] and ordered the lower extremity EMG[ ] testing that corroborated his opinions as far as failed surgery." Id. Plaintiff also asserts that the ALJ's reliance on Dr. Pradhan's opinion "tainted" the ALJ's credibility determination. Id. at 13.

Responding, Defendant contends the ALJ properly discounted Dr. Rehman's opinion because Dr. Rehman "did not indicate his judgment about the nature and severity of Plaintiff's impairments and what he could do despite his impairments and only indicated that Plaintiff was precluded from working his current 'occupation.'" Def.'s Mem. at 6 (citation omitted). With regard to Dr. Rehman's opinion that Plaintiff was totally disabled, Defendant argues that this opinion "was not entitled to any special significance" as it involves an issue reserved for the Commissioner. Id. at 6-7. Defendant further asserts that, as the ALJ indicated, Dr. Rehman's opinion was "inconsistent with the record as a whole." Id. at 7. As to the ALJ's credibility determination, Defendant argues that the "medical evidence supports

the ALJ's evaluation of Plaintiff's subjective symptoms," and that the ALJ "properly considered Plaintiff's activities in evaluating his claim." Id. at 11 (citations omitted).

**2. Applicable Law**[5]

The Regulations establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

---

[5] On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed his claims before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[6] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

-7-

With regard to a treating physician,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, — F.3d —, No. 17-11683, 2018 WL 1061567 (11th Cir. Feb. 27, 2018); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Hargress, 2018 WL 1061567; Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating

---

[7] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

-8-

physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Hargress, 2018 WL 1061567; Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of

the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

Although "credibility determinations are the province of the ALJ," Moore, 405 F.3d at 1212, "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony, Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

### 3. Opinions at Issue

Dr. Pradhan, a neurosurgeon at St. Vincent's Healthcare, and Dr. Rehman, a pain management specialist at Sunshine Spine & Pain, P.A., first treated Plaintiff in June 2013. See Tr. at 260, 275 (duplicate), 377. Dr. Pradhan treated Plaintiff for pain in his lower back and legs. See Tr. at 257-66, 275-92, 527-31 (duplicates included). The administrative transcript contains several treatment notes from Dr. Pradhan, spanning June 3, 2013 to May

27, 2015. Tr. at 257-66, 275-92, 527-31 (duplicates included). Dr. Rehman treated Plaintiff primarily for low back pain, bilateral leg sciatica, and neck and shoulder pain. See Tr. at 349-428, 493-521, 534-75. The administrative transcript contains multiple treatment notes from Dr. Rehman, spanning June 12, 2013 to September 30, 2015. See Tr. at 250-79, 387-415, 422-28, 493-521, 534-75. Plaintiff's relevant treatment is summarized below.

On June 3, 2013, Dr. Pradhan treated Plaintiff for pain in his lower back and legs. Tr. at 260, 275 (duplicate). Plaintiff reported the pain started four weeks prior while he was "lifting wood logs." Tr. at 260, 275 (duplicate). Plaintiff indicated that at its onset, the pain was a "10/10" in severity but that at the time of the appointment it was a "3-4/10." Tr. at 260, 275 (duplicate). Dr. Pradhan reviewed the findings of a CT scan of Plaintiff's lumbar back and noted that it showed an "L4-5 right side disc herniation." Tr. at 260, 275 (duplicate). Dr. Pradhan noted Plaintiff's gait was normal. Tr. at 260, 275 (duplicate). On July 2, 2013, because Plaintiff continued to experience pain, Dr. Pradhan performed a "[r]ight L4-L5 minimally invasive laminotomy" and "foraminotomy" with "decompression of the L4 and L5 nerves." Tr. at 290. On July 12, 2013, Dr. Pradhan reported Plaintiff was walking with a cane but was "doing fairly well." Tr. at 265, 282 (duplicate). On September 23, 2013, Dr. Pradhan indicated Plaintiff "continue[d] to complain of pain" that Dr. Pradhan "[could not] explain." Tr. at 286.

On that date, Dr. Pradhan ordered a lumbar MRI, which was performed on October 9, 2013 ("October 2013 MRI"). Tr. at 286, 297. According to the MRI report, there was "[n]o evidence of disc herniation or of significant spinal canal or foraminal stenosis." Tr. at 297. On October 11, 2013, Dr. Pradhan indicated that the October 2013 MRI shows "no disc herniation or foraminal stenosis." Tr. at 257, 288 (duplicate). He noted that Plaintiff's "[m]otor

strength [was] 5/5 bilaterally." Tr. at 257, 288 (duplicate). On October 16, 2013 Plaintiff rated his low back pain as "7+/10," and Dr. Rehman indicated that the October 2013 MRI shows "[d]egenerative changes at L2-3-4 level discs with a right far lateral herniation abutting the exiting L4 root in both the T1 [and] T2 axial images." Tr. at 372-73. On that date, Dr. Rehman also ordered that an EMG test ("2013 EMG") be conducted. See Tr. at 374. On November 12, 2013, Dr. Rehman indicated that the 2013 EMG "shows right L4 [and] L5 radiculopathy and polyneuropathy." Tr. at 368. Plaintiff's gait was noted to be antalgic. Tr. at 369.

In December 2013, Plaintiff reported to Dr. Rehman that his low back pain level was at "3/10," and Dr. Rehman indicated Plaintiff's gait was antalgic. Tr. at 363-64. In January 2014, Plaintiff reported his low back pain level was at "3/10," and his gait was noted to be normal. Tr. at 356-57. In March 2014, Plaintiff reported that his low back pain had increased and rated it at "6/10." Tr. at 352. Dr. Rehman noted that Plaintiff's gait was normal. Tr. at 353. On May 23, 2014, Dr. Rehman completed a "Disability Update" in which he indicated that Plaintiff remained totally disabled from his occupation. Tr. at 492.[8] In support of his opinion on Plaintiff's inability to work, he provided the following objective medical evidence: "MRI scan, failed surgery." Tr. at 492. On the same date, Plaintiff indicated his pain was "severe" and reported his low back and leg pain level was at "6/10." Tr. at 422. Plaintiff's gait was noted to be antalgic. Tr. at 423. In July 2014, Plaintiff was admitted to the emergency room due to chest pain, but he indicated he had no back pain. Tr. at 429, 437. Plaintiff's gait was noted to be normal. Tr. at 448. In August 2014, Plaintiff reported to Dr. Rehman that "he injured his back while working on a piece of house siding." Tr. at 493. Plaintiff indicated that

---

[8] The Disability Update contains a date of May 16, 2014 on the upper left corner of the page. See Tr. at 492. Dr. Rehman likely completed it on May 23, 2014, as this is the date next to his signature. See Tr. at 492.

the pain resulting from this injury was "sudden" but improved "after about [four] days." Tr. at 493. He rated his low back and leg pain at "4/10" at the time of the appointment. Tr. at 493. Dr. Rehman indicated Plaintiff's gait was antalgic. Tr. at 494.

On March 4, 2015, another MRI of Plaintiff's lumbar spine was conducted ("March 2015 MRI"). See Tr. at 554-55. The March 2015 MRI resulted in the following findings: "minimal disc bulge[s]" at L2-L3 and L3-L4; "[b]ilateral degenerative facet arthropathy with slight enhancement" at L3-L4; "[m]inor degenerative disc dessication" at L4-L5; "[m]ild diffuse disc bulging with minimal spinal canal stenosis" at L4-L5; a "small annular fissure" at L4-L5; "[b]ilateral degenerative facet arthropathy with mild enhancement on the left" at L4-L5; and "mild to moderate left and mild right neural foraminal stenosis" at L4-L5. Tr. at 554.

On March 11, 2015, Plaintiff reported to Dr. Rehman that his low back pain level was at "3/10" and his leg pain was at "5/10." Tr. at 551. Further, "[n]o gait abnormality was noted." Tr. at 552. In April 2015, Plaintiff indicated his low back and leg pain level was at "3/10" and his gait was noted to be antalgic. Tr. at 547, 549. On May 12, 2015, Dr. Rehman noted Plaintiff's low back pain increased to "5/10," his leg pain remained at "5/10," and his gait remained antalgic. Tr. at 543-44. On May 27, 2015, Plaintiff followed up with Dr. Pradhan. Tr. at 527-31. Dr. Pradhan indicated that Plaintiff's motor strength was "5/5" and that there was "no pain, spasms, or bony abnormalities" in Plaintiff's lumbar spine. Tr. at 530. Dr. Pradhan noted that Plaintiff has "minimal stenosis at L4/5" and again stated that he "[could not] explain" Plaintiff's reported pain. Tr. at 530. Plaintiff's gait was normal. Tr. at 530. In June 2015, Plaintiff reported to Dr. Rehman that his lower back and leg pain level was at "5/10" and his right hip pain level was at "7/10." Tr. at 538. Dr. Rehman noted Plaintiff's gait was antalgic. Tr. at 539. In August 2015, Plaintiff reported to Dr. Rehman that the pain level in his lower

back, legs, and hips was at "5/10." Tr. at 564. Plaintiff's gait was noted to be normal. Tr. at 565.

### 4. Analysis of ALJ's Findings

The ALJ gave "little weight to the treating physician opinion of Dr. Rehman." Tr. at 29. In doing so, the ALJ cited Exhibit 11F that contains the Disability Update as well as several treatment notes from Dr. Rehman spanning November 12, 2013 to August 6, 2014. See Tr. at 492-517. According to the ALJ, "Dr. Rehman did not give specific functional limitations caused by [Plaintiff's] impairments," and "he stated that [Plaintiff] remained totally disabled from 'his occupation' and did not state that [Plaintiff] could not perform any type of work." Tr. at 29. The ALJ also noted that "Dr. Rehman stated that an MRI scan showed a failed surgery; however, in May 2015, Dr. Pradhan noted that the MRI showed only minimal stenosis at L4-5, which did not explain [Plaintiff's] alleged low back pain and leg pain." Tr. at 29. Given the grounds upon which the ALJ discounted Dr. Rehman's opinion and the ALJ's citation of Exhibit 11F, it appears that in giving little weight to Dr. Rehman's opinion, the ALJ was referring specifically to and discounting only the Disability Update.[9]

The undersigned finds that the ALJ did not err in his assessment of Dr. Rehman's opinion. The grounds upon which the ALJ discounted Dr. Rehman's opinion are supported

---

[9] Although the ALJ did not state the weight assigned to the treatment notes from Dr. Rehman, it is clear from the Decision that the ALJ accepted the impressions and diagnoses contained in them. The ALJ discussed in detail these records and relied on them in giving only "some weight" to the opinion of one of the State agency consultants and assigning greater limitations than those opined by that consultant. See Tr. at 29. The ALJ also relied on Dr. Rehman's treatment notes in finding Plaintiff's statements regarding his symptoms "not entirely credible." Tr. at 26. Upon review, it is clear that Dr. Rehman's treatment notes (which do not include the Disability Update) are consistent with the ALJ's analysis and RFC finding. Accordingly, any error in the ALJ's failure to specifically assign weight to the opinions expressed in the treatment notes is harmless. See, e.g., Wright v. Barnhart, 153 F. App'x. 678, 684 (11th Cir. 2005) (finding that "[a]lthough the ALJ did not explicitly state what weight he afforded the opinions of [four physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless").

by substantial evidence. First, to the extent that Dr. Rehman offered an opinion as to the ability of Plaintiff to work, such opinions are reserved for the Commissioner. See Denomme v. Comm'r, Soc. Sec. Admin., 518 F. App'x. 875, 878 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1)) (holding that opinions on issues such as whether a condition would likely prevent a claimant from maintaining gainful employment are not medical assessments, but are rather opinions on issues reserved to the Commissioner's discretion). Moreover, Dr. Rehman limited his opinion that Plaintiff is unable to work to Plaintiff's ability to work in Plaintiff's "occupation" at the time, Tr. at 492, and the ALJ found that Plaintiff was unable to perform any past relevant work, Tr. at 29.

Second, the ALJ did not err in relying on Dr. Pradhan's treatment notes to discount Dr. Rehman's opinion that Plaintiff's inability to work was due to failed back surgery. Contrary to Plaintiff's assertion, Dr. Pradhan's opinions are based on objective testing—namely Plaintiff's MRIs. As noted by the ALJ, Plaintiff's MRIs revealed mostly mild findings. Tr. at 27. The October 2013 MRI shows "[n]o evidence of disc herniation or of significant spinal canal or foraminal stenosis." Tr. at 297 (MRI findings); see Tr. at 257 (Dr. Pradhan's treatment note). The March 2015 MRI also shows mild findings. See Tr. at 554 (MRI findings), 530 (Dr. Pradhan's treatment note). Dr. Pradhan stated that based on these results, he is unable to explain Plaintiff's reported pain. See Tr. at 257, 530. Further, as noted, the 2013 EMG showed "right L4 and L5 radiculopathy and predominantly motor polyneuropathy." Tr. at 369. Plaintiff does not explain, nor is it clear to the Court, how the "2013 EMG findings corroborated [his] worsening pain and symptoms," Pl.'s Br. at 11, to such an extent as to render him disabled. Although Dr. Pradhan did not refer to the EMG findings in his treatment notes, it does not appear that they are inconsistent with Dr. Pradhan's opinion or the ALJ's

RFC assessment. Notably, Dr. Pradhan diagnosed Plaintiff with lumbar radiculopathy, see, e.g., Tr. at 257, 288, and no physician diagnosed Plaintiff with polyneuropathy.

As to the ALJ's credibility finding, the undersigned finds that it was not tainted by the ALJ's reliance on Dr. Pradhan's opinion, and it is supported by substantial evidence. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in th[e D]ecision." Tr. at 26. The ALJ then engaged in a lengthy analysis of Plaintiff's credibility and in doing so, relied on objective medical evidence,[10] the stability of Plaintiff's condition on medication (as reported in Dr. Rehman's treatment notes), and Plaintiff's activities of daily living. See Tr. at 26-28. Thus, the ALJ appropriately supported his credibility finding with "explicit and adequate reasons," Wilson, 284 F.3d at 1225, and there is no error here.

## B. Step-Five Finding

### 1. Parties' Arguments

Plaintiff argues that, based on the VE's testimony, the ALJ erred in finding at step five that Plaintiff retained the capacity to perform jobs existing in significant numbers in the national economy. Pl.'s Br. at 13-15. Plaintiff asserts that "[w]hen providing the numbers of jobs, the [VE] even admitted that 'boy these numbers are tight' and that there would be approximately 17,800 cardiac monitor technician jobs in the United States and 'here we go,

---

[10] Notably, the ALJ relied on Dr. Rehman's treatment notes. See Tr. at 26, 28. The ALJ noted that Dr. Rehman's treatment notes show Plaintiff's gait was sometimes antalgic, but they also "consistently indicate that there was no incoordination pointing to any active neurological dysfunction, and [Plaintiff's] coordination, gait, and balance were normal during this period." Tr. at 26. The ALJ also stated that according to Dr. Rehman's notes, Plaintiff "continued to have normal strength and reflexes." Tr. at 26.

1,300' cardiac monitor technician jobs in the State of Florida." Id. at 13-14 (quoting Tr. at 57). Plaintiff concedes that "there is no 'magic number' that equates to a significant number," but he argues that the numbers provided by the VE are not significant numbers and that "[e]ven the [VE] admitted that the number was limited." Id. at 15.

Responding, Defendant contends that "the number of jobs identified by the VE represents a significant number of jobs in the national economy." Def.'s Mem. at 13. Further, argues Defendant, "[w]hile Plaintiff appears to solely rely on the VE's testimony that the number of jobs were 'tight,' the VE does not decide what constitutes a significant number of jobs . . . ." Id. n.4.

### 2. Applicable Law

At step five in the sequential inquiry, "the ALJ must determine if there is other work available in significant numbers in the national economy that [Plaintiff] has the ability to perform." Phillips, 357 F.3d at 1239 (11th Cir. 2004). In this determination, "the 'appropriate focus under the regulation is the national economy,' not the local economy in which the claimant lives." Atha v. Comm'r, Soc. Sec. Admin., 616 F. App'x 931, 934 (11th Cir. 2015) (quoting Allen v. Bowen, 816 F.2d 600, 603 (11th Cir. 1987)). Indeed, it does not matter "whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

There is, moreover, no bright line rule as to what constitutes a "significant number" of positions in this context, and the United States Court of Appeals for the Eleventh Circuit recently acknowledged that it "has never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute

and regulations." Atha, 616 F. App'x at 934. In Atha, the court upheld the ALJ's determination that 440 jobs in Alabama and 23,800 jobs nationally constituted a significant number. 616 F. App'x at 935.

### 3. Analysis of ALJ's Decision

The ALJ relied on the VE's testimony and found that Plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." Tr. at 30 (emphasis omitted); see Tr. at 30-31. According to the ALJ, the VE testified that a person with Plaintiff's limitations and other factors would be able to perform the job of a cardiac monitor technician, of which there are 17,800 positions available in the national economy and 1,300 available in Florida. Tr. at 31.

Upon review, the undersigned finds the ALJ did not err in determining Plaintiff can perform jobs that exist in significant numbers in the national economy. See Brooks v. Barnhart, 133 F. App'x 669, 671 (11th Cir. 2005) (holding that substantial evidence supported the ALJ's finding that 840 jobs in the national economy constitutes a significant number); Tillman v. Colvin, No. 3:15-cv-90-J-JBT, 2015 WL 12859425, at *3 (M.D. Fla. Aug. 10, 2015) (unpublished) (finding that substantial evidence supports the ALJ's finding that 17,000 Surveillance System Monitor jobs in the national economy constitutes a significant number).

## V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on March 19, 2018.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of record